UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| HANNAH HOUSDEN, Plaintiff, | ) | CIVIL ACTION FILE NO. |
| v. | ) | |
| VANDERBILT UNIVERSITY, Defendant. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Hannah Housden ("Ms. Housden" or "Plaintiff") respectfully submits this Complaint for Damages and Equitable Relief:

## INTRODUCTION

1. Plaintiff files this Complaint for declaratory, injunctive, and monetary relief against Defendant for sex discrimination (inclusive of gender identity) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Tennessee Human Rights Act ("THRA") and for disability discrimination in violation of the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 et seq., the Rehabilitation Act, the Tennessee

Disability Act ("TDA") and Section 1557 of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116.

## JURISDICTION AND VENUE

2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

3. Plaintiff also brings claims under the Tennessee Human Rights Act, T.C.A. §§4-21-102, *et. seq.* over which this Court has jurisdiction under 28 U.S.C. §1367.

4. The unlawful violations of Plaintiff's civil rights were committed within the Middle District of Tennessee.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE EXHAUSTION

6. Ms. Housden has satisfied the administrative prerequisites to perfect her claims of discrimination.

7. Specifically, Ms. Housden filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex and disability

discrimination and timely filed this lawsuit following receipt of a Notice of Right to Sue Letter.

## PARTIES

8. Ms. Housden is now and was at all times relevant to this action, a citizen of the United States entitled to bring actions of this type and nature.

9. Ms. Housden is now and was at all times relevant to this action a resident of the state of Tennessee.

10. Defendant Vanderbilt University ("Vanderbilt" or "Defendant") is a private, non-profit educational institution, which receives significant federal funding assistance including on information and belief from the Department of Health and Human Services ("HHS") or one of the organizations under HHS, and is incorporated and does business in Nashville, Tennessee.

11. Ms. Housden is employed by Vanderbilt and was employed by Vanderbilt at all relevant times hereto.

## STATEMENT OF FACTS

12. Ms. Housden is a transgender female.

13. Ms. Housden has been diagnosed with gender dysphoria[1] and is thus an individual with a disability as that term is defined under §504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and the Tennessee Disability Act because she has an actual impairment that substantially limits one or more of her major life activities.

14. At all relevant times, Ms. Housden has been a "qualified individual" with a disability because she is able to perform the essential functions of her job with or without a reasonable accommodation.

15. At all relevant times to this lawsuit, Ms. Housden has been an "employee" of Defendant.

16. Vanderbilt University is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e(f)) and within the meaning of the Americans with Disabilities Act (42 U.S.C. §12101).

---

[1] "Gender dysphoria" refers to psychological distress and/or discomfort resulting from an incongruence between a person's sex assigned at birth and that person's gender identity. Gender dysphoria is a diagnosis listed in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), published by the American Psychiatric Association to diagnose mental conditions. The diagnosis is based on the individual's discomfort as the problem, and not on the person's gender identity as a problem.

17. Defendant widely publicizes itself as a positive place for LGBTQ students and staff, based on various non-discrimination policies it has adopted, but chose to violate its own anti-discrimination policies with respect to Ms. Housden.

18. At one time Defendant publicized a "Transgender Tool Kit" to help support transgender employees and students but on information and belief stopped doing so approximately two years ago.

19. Ms. Housden is employed by Defendant as a faculty member in its College of Arts and Sciences.

20. As an employee of Defendant, Ms. Housden is also a participant in Defendant's employee health insurance plan ("the Plan").

21. Defendant's Plan is self-funded.

22. Aetna is the insurance provider for the Plan and administers the Plan.

23. Although Aetna makes initial coverage determinations, the Plan provides that it is Defendant who has the "final say" on approving or disapproving claims should an employee seek a second-level appeal of a denial of benefits.

24. The second level of appeal is final and thus, it is Defendant who makes the final coverage decision in such cases.

25. On or about March 14, 2024, Ms. Housden's physician submitted a claim to Aetna for prior authorization of certain gender-affirming procedures, including surgical facial feminization procedures.

26. Facial feminization surgery ("FFS") is a procedure that includes a certain subset of procedures designed to soften and round traditionally masculine facial characteristics so that a gender dysphoric individual's external appearance aligns with her gender identity.

27. Such procedures can include, for example, forehead reconstruction and jaw and chin contouring .

28. The World Professional Association for Transgender Care ("WPATH") is an interdisciplinary professional association containing among its members professionals in medicine, psychology, and counseling, among others.

29. WPATH publishes its Standards of Care and Ethical Guidelines, which represent a professional, evidence-based consensus about the psychiatric, psychological, medical, and surgical management of gender dysphoria.

30. WPATH standards are "based on the best available science and expert professional consensus in transgender health" with recommendation statements "developed based on data derived from independent systematic literature reviews,

where available, background reviews and expert opinions." Coleman, et al, "Standards of Care for the Health of Transgender and Gender Diverse People, Version 8," International Journal of Transgender Health, 23:sup1, S1-S259; https://doi.org/10.1080/26895269.2022.2100644.

31. Under the WPATH standards, FFS is considered a medically necessary procedure and not simply "cosmetic."

32. WPATH's current **S**tandards of Care, Version 8 (SOC8) state that FFS is a crucial part of gender affirmation rather than simply "cosmetic."

33. On or about March 29, 2024, Aetna issued a letter denying coverage for the FFS as not medically necessary, despite Ms. Housden's physician specifically stating that it is medically necessary for Ms. Housden.

34. Ms. Housden appealed the denial.

35. Ms. Housden's appeal reached the second level at which point Defendant, not Aetna, makes the final decision.

36. On or about December 5, 2024, Defendant denied Ms. Housden's claim, again stating that the surgery would be merely cosmetic, despite Ms. Housden's physician specifically stating that the surgery is indeed medically necessary.

37. The terms of Defendant's Plan do not exclude all facial work for faculty and staff, just certain facial work done as treatment for gender dysphoria.

38. Defendant also extends certain gender-affirming care benefits for students through its student plan but not for transgender faculty and staff.

39. Student benefits include, among other things, "[f]acial feminization and masculinization."

[https://www.uhcsr.com/uhcsrbrochures/Public/ClientBrochures/2024-99-1%20Certificate.pdf](https://www.uhcsr.com/uhcsrbrochures/Public/ClientBrochures/2024-99-1%20Certificate.pdf) (Section 6, "Medical Expense Benefits", item 47.)

40. Ms. Housden has paid out of pocket for certain FFS procedures her physician recommended and Defendant denied but there are additional FFS procedures her physician has recommended that have not been performed and for which she seeks coverage.

## COUNT I
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

41. Paragraphs 1 through 40 are incorporated herein by reference.

42. Plaintiff is in a protected class based on her sex (female) and her gender identity.

43. Plaintiff was an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

44. Plaintiff was qualified for the position to which she was hired.

45. Defendant was Plaintiff's "employer" Plaintiff within the meaning of Title VII and 42 U.S.C. § 2000e(a)-(b).

46. Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of sex in violation of Title VII.

47. Specifically, Defendant discriminated against Ms. Housden on the basis of her sex, female, and her gender identity, by treating her less favorably than cisgender[2] employees.

48. Plaintiff's sex was a motivating factor in Defendant's decisions to take the above-pleaded discriminatory actions, even if her sex was not the only factor that motivated that decision.

49. Defendant's discriminatory actions violate Title VII.

50. The actions taken by Defendant caused Ms. Housden to suffer both monetary and non-monetary losses for which Defendant is liable.

---

[2] "Cisgender" means the particular individual's gender identity is consistent with the sex assigned to the individual at birth. An infant is typically assigned "male" or "female" based on the appearance of the infant's external physical sex characteristics (i.e., external genitalia).

51. As a result of Defendant's unlawful actions, Ms. Housden has also suffered emotional distress, inconvenience, humiliation, and other indignities compensable under Title VII, for which Defendant is liable.

52. Defendant undertook its unlawful conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling her to recover punitive damages against Defendant.

53. Additionally, or in the alternative, Defendant undertook its unlawful conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover punitive damages.

54. Plaintiff is entitled to an award of economic damages, compensatory damages, attorney's fees, punitive damages, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

## COUNT II
## SEX DISCRIMINATION IN VIOLATION OF TENNESSEE HUMAN RIGHTS ACT

55. Paragraphs 1 through 40 are incorporated herein by reference.

56. Plaintiff, a female and transgender individual, is a member of protected classes covered by the Tennessee Human Rights Act.

57. Plaintiff was qualified for the position to which she was hired.

58. Defendant is an employer within the meaning of the Tennessee Human Rights Act, T.C.A. § 4-21-102.

59. Defendant subjected Plaintiff to disparate treatment because of her sex, inclusive of gender identity, including, but not limited to, treating her less favorably than cisgender individuals, all in violation of the Tennessee Human Rights Act.

60. Plaintiff's sex was a motivating factor in Defendant's decisions to take the above-pled discriminatory actions, even if her sex was not the only factor that motivated that decision.

61. Defendants undertook this unlawful conduct intentionally and maliciously with respect to Plaintiff and her protected rights, entitling her to recover punitive damages against Defendants.

62. Additionally, or in the alternative, Defendants undertook this unlawful conduct recklessly with respect to Plaintiff and her protected rights, entitling her to recover punitive damages.

63. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages including stress, inconvenience, loss of income and benefits, humiliation, and other indignities.

64. Plaintiff is entitled to an award of economic damages, compensatory damages, attorney's fees, punitive damages, and all other appropriate damages, remedies, and other relief available under the Tennessee Human Rights Act.

**COUNT III**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

65. Plaintiff incorporates paragraphs 1-40 above as if fully set forth herein.

66. Ms. Housden is and, at all times relevant hereto, was a qualified individual with a disability as that term is defined under the ADA, 42 U.S.C. §12102(1), because she suffers from gender dysphoria, which substantially limits one or more of her major life activities, has a record of such impairments, and/or was regarded by Defendant as a person with such impairments.

67. At all relevant times, Ms. Housden was able to perform the essential functions of her job with or without an accommodation.

68. Defendant, by and through its agents, representatives, and employees, intentionally discriminated against Ms. Housden by subjecting her to adverse employment actions, including but not limited to denying coverage for her FFS

procedure, which constitutes unlawful disability discrimination against Ms. Housden in violation of the ADA.

69. Defendant acted in bad faith, willfully and wantonly disregarded, and/or in reckless disregard of, Ms. Housden 's rights under the ADA.

70. As a direct and proximate result of Defendant's intentional discrimination, Ms. Housden has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial.

71. Defendant's actions have caused and will continue to cause Ms. Housden to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

72. Pursuant to the ADA, Ms. Housden is entitled to damages including economic damages, compensatory damages, punitive damages, her attorney fees and costs of litigation, and all other relief recoverable under the ADA.

## COUNT IV
## VIOLATION OF THE REHABILITATION ACT OF 1973

73. Plaintiff incorporates all paragraphs 1-40 above as if fully set forth herein.

74. At all relevant times, Ms. Housden was a qualified individual with a disability as that term is defined under the Rehabilitation Act, because she suffers from gender dysphoria that substantially limits one or more of her major life activities, has a record of such impairments, and/or was regarded by Defendant as a person with such impairments.

75. At all relevant times, Ms. Housden was able to perform the essential functions of her job with or without an accommodation.

76. Defendant, by and through its agents, representatives, and employees, intentionally discriminated against Ms. Housden by subjecting her to adverse actions including, but not limited to denial of coverage for her FFS.

77. The above-pleaded discriminatory conduct toward Ms. Housden constitutes unlawful disability discrimination against Plaintiff in violation of the Rehabilitation Act of 1973.

78. Defendant acted in bad faith, willfully and wantonly disregarded, and/or in reckless disregard for, Ms. Housden's rights under the Rehabilitation Act of 1973.

79. As a direct and proximate result of Defendant's intentional discrimination, Ms. Housden has suffered out of pocket losses and has been deprived of job-related economic benefits, all in an amount to be established at trial.

80. Defendant's actions have caused and will continue to cause Ms. Housden to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

81. Pursuant to the Rehabilitation Act, Ms. Housden is entitled to damages including economic damages, compensatory damages, her attorneys' fees and costs of litigation, and all other relief recoverable under the Rehabilitation Act.

## COUNT V
## DISCRIMINATION IN VIOLATION OF THE TENNESSEE DISABILITY ACT

82. Plaintiff incorporates paragraphs 1-40 above as if fully set forth herein.

83. At all relevant times, Ms. Housden was a qualified individual with a disability as that term is defined under the Tennessee Disability Act, because she suffers from gender dysphoria that substantially limits one or more of her major life activities, has a record of such impairments, and/or was regarded by Defendant as a person with such impairments. T.C.A. §8-50-103, §8-50-104.

84. At all relevant times, Ms. Housden was able to perform the essential functions of her job with or without an accommodation.

85. Defendant is an employer within the meaning of the Tennessee Human Rights Act. T.C.A. §4-21-102.

86. Defendant, by and through its agents, representatives, and employees, intentionally discriminated against Ms. Housden by subjecting her to adverse actions including, but not limited to denying coverage for her FFS despite allowing coverage for substantially similar procedures to cisgender individuals and deeming medically-necessary procedures for gender affirming care to be "cosmetic." .

87. The above-pleaded discriminatory conduct toward Ms. Housden constitutes unlawful disability discrimination and retaliation against her in violation of the Tennessee Disability Act.

88. Defendant acted in bad faith, willfully and wantonly disregarded, and/or in reckless disregard for, Ms. Housden 's rights under the Tennessee Human Rights Act.

89. As a direct and proximate result of Defendant's intentional discrimination, Ms. Housden has suffered out of pocket losses and has been deprived of job-related economic benefits, all in an amount to be established at trial.

90. Defendant's actions have caused and will continue to cause Ms. Housden to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

91. Pursuant to the Tennessee Human Rights Act, Ms. Housden is entitled to damages including,  lost benefits, compensatory damages, her attorney fees and costs of litigation, and all other relief recoverable under the Tennessee Human Rights Act.

**COUNT VI**
**UNLAWFUL DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116**

92. Plaintiff incorporates paragraphs 1-40 above as if fully set forth herein.

93. Section 1557 of the Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116, in relevant part, provides that "an individual shall not . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance" on the basis of sex and other protected classifications. 42 U.S.C. § 18116.

94. Defendant is subject to Section 1557 because it receives, and at all relevant times received, federal financial assistance.

95. Defendant, by and through its agents, representatives, and employees, intentionally discriminated against Ms. Housden by subjecting her to adverse actions including, but not limited to denying coverage for her FFS despite allowing coverage for substantially similar procedures to cisgender individuals and deeming medically-necessary procedures for gender affirming care to be "cosmetic." .

96. As a result of Defendant's discriminatory conduct, Ms. Housden has suffered damages and continues to suffer damages.

## PRAYER FOR RELIEF

97. WHEREFORE, PREMISES CONSIDERED, Ms. Housden demands a TRIAL BY JURY and prays for the following relief:

98. That this matter be filed in this Court, that proper process issue and be served on the Defendant, and that Defendant be required to respond within the time allowed by law.

99. That this matter be tried before a jury of 12.

100. That upon a hearing, Defendant be found to have violated Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Rehabilitation Act of 1973, the Tennessee Disability Act, the Tennessee Human Rights Act, and the Affordable Care Act.

101. That this Court enter injunctive relief directing defendant to approve the procedure at issue.

102. That upon a hearing, Ms. Housden be awarded a judgment for lost benefits, and other pecuniary and economic losses caused by Defendant's unlawful conduct.

103. That upon a hearing, Plaintiff be awarded a judgment for pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, punitive damages, and other non-pecuniary losses.

104. That Plaintiff be awarded a judgment for the reasonable attorney fees and costs she has incurred in being forced to pursue this action, with pre- and post-judgment interest thereon.

105. That Plaintiff be awarded such other and further relief to which she is entitled.

Respectfully submitted this 12th day of August, 2026.

RUBENFELD LAW OFFICE, PC

/s/ *Abby R. Rubenfeld*
Abby R. Rubenfeld (B.P.R. #6645)
810 Dominion Drive, Suite 215
Nashville, Tennessee 37228
(615) 386-9077
arubenfeld@rubenfeldlaw.com

Parks Chesin & Walbert, PC

*/s/ Thomas J. Mew (pro hac vice application to be filed)*
1355 Peachtree Street, N.E.
Suite 2000
Atlanta, GA 30309
(404) 873-8008
tmew@pcwlawfirm.com